# Illinois Official Reports

## Appellate Court

---

*In re Parentage of J.W.*, 2017 IL App (2d) 160554

---

Appellate Court Caption
: *In re* PARENTAGE OF J.W., a Minor (Carol M., Petitioner-Appellant, v. Larry W., Respondent-Appellee).

District & No.
: Second District
Docket No. 2-16-0054

Filed
: April 28, 2017

Decision Under Review
: Appeal from the Circuit Court of Du Page County, No. 01-F-424; the Hon. Timothy J. McJoynt, Judge, presiding.

Judgment
: Reversed and remanded.

Counsel on Appeal
: Jerry W. Kinnan, of Jerry Kinnan Ltd., of Addison, for appellant.

  Elizabeth M. Westover and Kerry M. Born, of Westover Born, P.C., of Chicago, for appellee.

Panel
: JUSTICE McLAREN delivered the judgment of the court, with opinion.
  Justices Zenoff and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    During the proceedings in this parentage action, originally filed under the Illinois Parentage Act of 1984 (Parentage Act of 1984) (750 ILCS 45/1 *et seq.* (West 2008)), attorney Jerry Kinnan filed three motions for "Interim Attorney Fees" on behalf of his client, petitioner Carol M., seeking fees from respondent Larry W. The trial court dismissed Carol's third motion for interim attorney fees on the grounds that she was actually seeking contribution for final attorney fees and that Carol and Kinnan did not have a written engagement agreement. Carol appeals the trial court's dismissal of her third motion for interim attorney fees. Carol argues that the trial court erred by (1) failing to expeditiously schedule a hearing on her first two motions for interim attorney fees, and (2) determining that a written engagement agreement was required. We reverse and remand for further proceedings consistent with this opinion.

¶ 2                                    I. BACKGROUND

¶ 3    In this parentage case, the parties are the parents of J.W., born in 2001. Larry signed a voluntary acknowledgment of paternity two days after J.W.'s birth. After Carol petitioned for child support in 2002, the trial court ordered Larry to pay child support. This case has been litigated continuously with the assistance of many attorneys throughout the years. We will concern ourselves with the most recent events.

¶ 4    From the time of J.W.'s birth, J.W. has lived with Carol. However, in August 2015, J.W. began living with his godparents after Carol allegedly threatened to kill J.W. and herself and was taken to a nearby hospital, where she remained for several days.

¶ 5    In September 2015, Larry filed a "Petition to Modify Custody, to Remove Child to Maryland, and for other Relief," alleging that since the entry of an agreed parenting order, there had been a substantial change in circumstances, arising from the events of August 2015. On September 21, 2015, Kinnan filed his appearance on behalf of Carol. On September 28, 2015, the trial court appointed a guardian *ad litem* (GAL). On October 19, 2015, Carol filed a response to Larry's petition. On October 22, 2015, Carol filed a motion to modify child support.

¶ 6    On November 2, 2015, Carol, by and through Kinnan, filed her first motion for interim attorney fees, pursuant to sections 501(c-1) and 508 of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/501(c-1), 508 (West 2014)) and section 17 of the Parentage Act of 1984 (750 ILCS 45/17 (West 2014)).

¶ 7    In her motion, Carol alleged that (1) Kinnan had expended 23.5 hours on behalf of Carol since his appearance, (2) Carol owed Kinnan $7222 for attorney fees and costs, and (3) Kinnan estimated that there would be an additional $8000 in attorney fees and costs. Of note, Carol alleged that she and "[c]ounsel have been unable to come to an agreement on the amount of legal fees that [Carol] is willing to pay Counsel. Accordingly, Counsel, as the real party in interest, must therefore, seek legal fees on a *quantum meruit* basis." Both Kinnan and Carol attached affidavits to the motion.

¶ 8    On February 29, 2016, Carol, by and through Kinnan, filed her second motion for interim attorney fees. Kinnan's attached affidavit alleged that Carol owed him $14,464 for legal services rendered, and he sought an additional $5000 for legal services he anticipated Carol

would incur. Carol's notice of motion indicated that she would present her motion to the court on March 3, 2016.

¶ 9   On March 3, 2016, at the beginning of the call, the trial court listed all of the open motions, including Larry's motion to modify "custody," now renamed "parental allocation," and his motion for "removal," now renamed "relocation"; the GAL's motion to quash Carol's subpoena of J.W.; Carol's first motion for interim attorney fees; and Carol's second motion for interim attorney fees, which the court stated had been filed that day. The court heard the GAL's motion to quash Carol's subpoena, which it granted, and then proceeded to a hearing on Larry's motion to modify the allocation of parental responsibilities. The record does not contain a transcript of the remainder of the call that day.

¶ 10   On March 8, 2016, Carol, by and through Kinnan, filed her third motion for interim attorney fees. Carol alleged the following. Thus far, Kinnan had expended 71.15 hours in representing Carol and, based on *quantum meruit*, was owed $21,385 for attorney fees and costs. Kinnan estimated an additional $2500 in attorney fees and costs. Carol also alleged that she had previously filed two motions for interim attorney fees, which were presented to the court on December 3, 2015, and March 3, 2016, and remained pending and undetermined.

¶ 11   Kinnan attached his affidavit, wherein he averred, in part, the following:

"2. [Carol] ***engaged my law firm *** to represent [her] in her ongoing custody dispute with [Larry] on September 19, 2015.

3. [Kinnan] provided valuable legal services to Carol including drafting numerous pleadings, researching legal matters, consulting with [Carol,] and representing [Carol in court on several occasions.]

4. [Carol] and Counsel have been unable to come to a meeting of the minds regarding the hourly rate that [Carol] is to be charged for legal services rendered. I informed [Carol] that my hourly billing rate is $300.00. However, [Carol] has indicated that she is unable to pay Counsel for legal services rendered nor is she able to pay for her court ordered GAL fees.

5. [Carol] has not paid me a retainer fee nor has she paid me any amount towards the accrued and unpaid legal fees.

6. Counsel is *not* providing [Carol] any legal services on a pro bono basis and Counsel has so informed [Carol] that he is not working pro bono and that he wants to be paid for legal services rendered.

7. Notwithstanding that [Carol] is apparently unable to pay Counsel for services rendered and there has been no meeting of the minds regarding legal fees [Carol] must pay, Counsel is nevertheless entitled to be paid for services rendered on a *quantum meruit* basis. [Citation.]

8. *Quantum meruit* literally mean 'as much as he deserves.' " (Emphasis in original.)

¶ 12   In addition, Carol attached her affidavit to her third motion for attorney fees, wherein she averred, in part, the following:

"2. I met with [Kinnan] *** on September 19, 2015, to discuss with him [Larry's] custody and removal petitions that were pending before the court. I asked Counsel to represent me in the custody disputes.

3. I informed Counsel that I could not pay him a retainer fee, but that I would try to pay him for the legal services that he would render on my behalf. Counsel informed me that he was not going to represent me *pro bono* and that he wanted to be paid for services rendered. Counsel and I have not agreed on an hourly rate that Counsel would charge for services rendered. Counsel informed me that his billing rate is $300.00 per hour.

4. Due to my limited financial resources, I have not paid Counsel a retainer fee or any fees for the services that he has rendered and I do not have the financial resources to pay for Counsel's legal services.

\* \* \*

8. Counsel has sent me an invoice indicating that I currently owe him in excess of $21,000 for the legal services that he has rendered to date.

9. I do not have the financial wherewithal to pay Counsel the legal fees that he is owed."

¶ 13 Carol noticed her third motion for interim attorney fees for presentment to the court on March 11, 2016.

¶ 14 On March 11, 2016, in a written order, the trial court granted Larry's petition to modify the allocation of parental responsibilities, "transferring allocation of parental responsibility from [Carol] to [Larry]."[1] The trial court further granted Larry "sole authority over all parental responsibilities." The trial court also stated that Larry's petition for permanent relocation of J.W. to Maryland was granted "by agreement," and, "[u]nder separate order, the parties will enter into an Agreed Order regarding parenting time *** to be presented for review [and] entry by this Court on March 21, 2016." Finally, the trial court granted Larry 21 days to respond to Carol's third motion for fees and granted the parties 21 days to respond to the GAL's fee petition. The trial court set a hearing on fees for April 18, 2016.

¶ 15 On March 24, 2016, the trial court entered an "Agreed Final Order," providing for Larry to relocate J.W. to Maryland and for Carol to have parenting time with J.W. On April 12, 2016, the trial court entered an "Agreed Order" setting the case for hearing on May 11, 2016, on "all fee petitions outstanding."

¶ 16 On May 4, 2016, Larry filed a "Motion to Strike and Dismiss [Carol's] Third Motion for Interim Attorneys [*sic*] Fees" pursuant to section 2-615(b) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615(b) (West 2014)). Larry alleged that Carol's motion was insufficient at law because (1) she cited to "750 ILCS 45/802(a)," which does not exist, and "750 ILCS 5/501(c-1)," which does not apply to parentage cases, and (2) Carol did not sign a retainer agreement with Kinnan; she did not want to "contractually obligate herself to pay any amount of fees to [Kinnan]." Kinnan knew this yet "agreed to file an Appearance on behalf of Carol." There was no contract between Carol and Kinnan; therefore, their relationship "appears to be a *pro bono* relationship, as there was no reasonable expectation for payment from [Carol]."

¶ 17 On June 14, 2016, the trial court granted Larry's motion to dismiss Carol's third motion for interim attorney fees. The trial court ruled, under the Illinois Parentage Act of 2015 (Parentage Act of 2015) (Pub. Act 99-85 (eff. Jan. 1, 2016) (adding 750 ILCS 46/101 *et seq.*)) and *In re*

---

[1]The trial court set forth its findings regarding Larry's petition to modify the allocation of parental responsibilities in a separate written "Opinion & Order" dated March 11, 2016.

*Minor Child Stella*, 353 Ill. App. 3d 415 (2004), that a "motion for interim fees is certainly allowable in a paternity action. The difficulty, of course comes in the provisions of the Illinois Marriage and Dissolution of Marriage Act, and specifically section 5/508[(c)] which requires an agreement, a written engagement agreement as a prerequisite to a final hearing for attorney's fees and court costs. But it's not a prerequisite to interim fees." The trial court also stated that Carol's "Third Motion for Interim Attorney Fees" was actually a motion for contribution for final attorney fees pursuant to section 503(j) of the Marriage Act (750 ILCS 5/503(j) (West 2014)). The trial court further stated that "without a written agreement in this case between Carol and Mr. Kinnan, I have to grant the motion to dismiss."

¶ 18     On July 8, 2016, Carol filed a notice of appeal.

¶ 19                                    II. ANALYSIS

¶ 20     Carol argues that the trial court failed to schedule a hearing on her first and second motions for interim attorney fees expeditiously, pursuant to 501(c-1)(1) of the Marriage Act (750 ILCS 5/501(c-1)(1) (West 2014)).

¶ 21     We begin by noting that effective January 1, 2016, the legislature repealed the Illinois Parentage Act of 1984 (750 ILCS 45/1 *et seq.* (West 2014)) and replaced it with the Parentage Act of 2015 (Pub. Act 99-85 (eff. Jan. 1, 2016) (adding 750 ILCS 46/101 *et seq.*)).

¶ 22     Carol filed her first motion for interim attorney fees on November 2, 2015, her second motion for interim attorney fees on February 29, 2016, and her third motion for interim attorney fees on March 8, 2016. Therefore, when Carol filed her second and third motions the Parentage Act of 2015 was in effect. However, after reviewing the language of the relevant sections of the Parentage Act of 1984 and the Parentage Act of 2015, we determine that the timing of the filing of Carol's motions does not affect our decision here.

¶ 23     The primary rule of statutory construction is to give effect to the intent of the legislature. *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 16. The most reliable indicator of legislative intent is the statutory language itself, which must be given its plain and ordinary meaning. *Id.* We review *de novo* issues of statutory construction *de novo. Id.*

¶ 24     Section 17 of the Parentage Act of 1984, relating to costs, provided:

> "[T]he court may order *reasonable fees of counsel*, experts, and other costs of the action, pre-trial proceedings, post-judgment proceedings to enforce or modify the judgment, and the appeal or the defense of an appeal of the judgment, *to be paid by the parties in accordance with the relevant factors specified in Section 508 of the Illinois Marriage and Dissolution of Marriage Act ***."* (Emphases added.) 750 ILCS 45/17 (West 2014).

¶ 25     Similarly, section 809(a) of the Parentage Act of 2015, relating to the right to counsel, provides:

> "[T]he court may order, *in accordance with the relevant factors specified in Section 508 of the Illinois Marriage and Dissolution of Marriage Act, reasonable fees of counsel*, experts, and other costs of the action, pre-trial proceedings, post-judgment proceedings to enforce or modify the judgment, and the appeal or the defense of an appeal of the judgment *to be paid by the parties*." (Emphases added.) 750 ILCS 46/809(a) (West Supp. 2015).

¶ 26    Thus, both section 17 of the Parentage Act of 1984 (750 ILCS 45/17 (West 2014)) and section 809(a) of the Parentage Act of 2015 (750 ILCS 46/809(a) (West Supp. 2015)) provide that, in a parentage action, the court may order reasonable fees of counsel and costs to be paid by the parties "in accordance with the relevant factors specified in *Section 508* of the Illinois Marriage and Dissolution of Marriage Act." (Emphasis added.) Accordingly, both sections are essentially the same for our purposes here. Therefore, the timing of the filing of Carol's motions for interim attorney fees is not relevant to our analysis in this case.

¶ 27    Neither section 17 of the Parentage Act of 1984 nor section 809(a) of the Parentage Act of 2015 uses the words "interim fees," but the sections refer to payment of "reasonable fees of counsel" for every stage of the proceedings, and then the sections direct the court to the "relevant factors specified in Section 508" of the Marriage Act.

¶ 28    Section 508 of the Marriage Act provides:

> "(a) The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own or the other party's costs and attorney's fees. Interim attorney's fees and costs *may be awarded from the opposing party, in a pre-judgment dissolution proceeding in accordance with subsection (c-1) of Section 501* [(750 ILCS 5/501)] ***." (Emphasis added.) 750 ILCS 5/508(a) (West 2014).

Thus, section 508 does not specify any relevant factors. Instead, it points to section 501(c-1) for the way "interim attorney's fees and costs may be awarded from the opposing party." *Id.*

¶ 29    Section 501(c-1) provides:

> "(c-1) As used in this subsection (c-1), 'interim attorney's fees and costs' means attorney's fees and costs assessed from time to time while a case is pending, in favor of the petitioning party's current counsel, for reasonable fees and costs either already incurred or to be incurred, and 'interim award' means an award of interim attorney's fees and costs. Interim awards shall be governed by the following:
>
> > (1) Except for good cause shown, a proceeding for (or relating to) interim attorney's fees and costs in a pre-judgment dissolution proceeding shall be nonevidentiary and summary in nature. All hearings for or relating to interim attorney's fees and costs under this subsection *shall be scheduled expeditiously by the court*." (Emphasis added.) 750 ILCS 5/501(c-1) (West 2014).

Then, in subsections (c-1)(1)(A)-(I), it sets forth nine factors for the court to consider when making an award. 750 ILCS 5/501(c-1)(1)(A)-(I) (West 2014).

¶ 30    Carol argues that the trial court abused its discretion by failing to expeditiously schedule hearings on her first and second motions for interim attorney fees. Carol filed her first motion for interim attorney fees on November 2, 2015. Carol's notice of motion indicated that the motion would be presented to the trial court on December 3, 2015, at a status call. However, Carol's first motion for interim attorney fees was not heard that day; instead, the trial court stated that it would "set [the case] for trial on all open pleadings" the following Tuesday. Carol asserts that the following Tuesday the trial court did not set a hearing date for her first motion for interim attorney fees. Regarding Carol's second motion, filed on February 29, 2016, she argues that the trial court stated on March 3, 2016, that it had not yet scheduled a hearing on her motion.

¶ 31    While it is true that a party who requests a hearing on attorney fees must be given one, the failure to request such a hearing results in a forfeiture of one's right to the hearing. See *Cabrera v. First National Bank of Wheaton*, 324 Ill. App. 3d 85, 103 (2001) (failure to request a hearing on a motion results in forfeiture).

¶ 32    In this case, Carol does not indicate where in the record she ever asked the trial court for a hearing date on either her first or second motion for interim attorney fees, or where in the record the trial court denied Carol's request for a hearing. In fact, during the hearing on Larry's motion to dismiss Carol's third motion for interim attorney fees, the trial court stated:

> "There has been an argument made that a prior interim fee petition had been filed by Carol and somehow the Court has denied Carol access to the Court system to have those matters resolved in a timely way.
>
> The Court has no recollection of such denial."

¶ 33    Carol cites nothing in the record that contradicts the trial court's finding. Accordingly, we conclude that Carol forfeited her right to a hearing on her first and second motions for interim attorney fees. See *id.* at 103.

¶ 34    Next, Carol argues that the trial court erred by granting Larry's section 2-615 motion to dismiss her third motion for interim attorney fees.

¶ 35    A motion to dismiss under section 2-615 of the Code challenges only the legal sufficiency of the complaint. *Bonhomme v. St. James*, 2012 IL 112393, ¶ 34. The critical inquiry is whether the allegations of the complaint, when considered in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. *Id.* All well-pled facts in the complaint must be taken as true, but conclusions of law will not be taken as true unless supported by specific factual allegations. *Id.* The dismissal of a complaint under section 2-615 of the Code is reviewed *de novo*. *Khan v. Deutsche Bank AG*, 2012 IL 112219, ¶ 47.

¶ 36    Carol argues that the trial court applied the wrong rule of law in granting Larry's section 2-615 motion to dismiss her third motion for interim attorney fees. Carol argues that the trial court (1) erroneously characterized her motion as for a final fee contribution pursuant to section 503(j) of the Marriage Act (750 ILCS 5/503(j) (West 2014)) and (2) erroneously determined that, without a written agreement between Carol and Kinnan, section 508(c) of the Marriage Act (750 ILCS 5/508(c) (West Supp. 2015)) precluded attorney fees and costs.

¶ 37    Because it is dispositive, we discuss Carol's second argument first. Section 508(c) provides, in part:

> "(c) *Final hearings for attorney's fees and costs against an attorney's own client*, pursuant to a Petition for Setting Final Fees and Costs of either a counsel or a client, shall be governed by the following:
>
> ***
>
> (2) No final hearing under this subsection (c) is permitted unless: (i) *the counsel and the client had entered into a written engagement agreement* at the time the client retained the counsel (or reasonably soon thereafter) and the agreement meets the requirements of subsection (f); (ii) the written engagement agreement is attached to an affidavit of counsel that is filed with the petition or with the counsel's response to a client's petition; (iii) judgment in any contribution hearing on behalf of the client has been entered or the right to a contribution hearing under subsection

(j) of Section 503 has been waived; (iv) the counsel has withdrawn as counsel of record; and (v) the petition seeks adjudication of all unresolved claims for fees and costs between the counsel and the client. Irrespective of a Petition for Setting Final Fees and Costs being heard in conjunction with an original proceeding under this Act, the relief requested under a Petition for Setting Final Fees and Costs constitutes a distinct cause of action. A pending but undetermined Petition for Setting Final Fees and Costs shall not affect appealability or enforceability of any judgment or other adjudication in the original proceeding." (Emphases added.) *Id.*

¶ 38 The plain language of section 508(c) clearly indicates that the legislature intended the requirement of a "written engagement agreement" to apply to "an attorney seeking fees from his or her former client." *In re Parentage of Rocca*, 408 Ill. App. 3d 956, 967 (2011). As the issue here involves Carol seeking fees from the opposing party, section 508(c) is inapplicable here. See *id.*

¶ 39 Larry argues that section 508 directs courts to apply certain section 503 factors. Larry notes that section 508(a) provides that "[a]ll provisions for contribution under this subsection shall also be subject to [paragraph (5) of subsection (j) of Section 503]." 750 ILCS 5/508(a) (West 2014). Larry also notes that section 503(j)(5) provides:

"A contribution award (payable to either the petitioning party *or the party's counsel*, or jointly, as the court determines) may be in the form of either a set dollar amount or a percentage of fees and costs (or a portion of fees and costs) *to be subsequently agreed upon by the petitioning party and counsel or*, alternatively, thereafter determined in a hearing pursuant to subsection (c) of Section 508 or previously or thereafter determined in an independent proceeding under subsection (e) of Section 508." (Emphases added.) 750 ILCS 5/503(j)(5) (West 2014).

Larry contends that, therefore, if a set dollar amount cannot be agreed upon by the petitioning party and counsel, then that amount must be determined in a hearing pursuant to either subsection (c) or (e) of section 508.

¶ 40 Larry concludes that, because the amount of fees Carol owes to Kinnan is uncertain, a determination must be made pursuant to section 508(c) before any amount of contribution from Larry can be assessed; otherwise section 503(j)(5) has no meaning. We disagree with Larry.

¶ 41 The plain language of section 503(j)(5) clearly indicates that the legislature intended that, where counsel has received no payment from his client due to hardship, a court could order a contribution award "to the party's counsel." Section 508(c) applies only if counsel and his client, the "petitioning party," cannot agree on how much each should receive from the contribution award. In this case, Carol has no claim to any contribution amount, because the record indicates that she has paid nothing to Kinnan. Attorney fees, while awarded to the client, actually belong to the attorney. See *Rocca*, 408 Ill. App. 3d at 969.

¶ 42 Our interpretation is in concert with the purposes underlying the Parentage Act. In *Stella*, the appellate court, addressing two certified questions, held that interim attorney fees can be awarded in a parentage proceeding under the costs provision of the Parentage Act of 1984 (750 ILCS 45/17 (West 2002)) and sections 501(c-1) and 508 of the Marriage Act (750 ILCS 5/501(c-1), 508 (West 2002)). *Stella*, 353 Ill. App. 3d at 420-21. The appellate court reasoned that a "fundamental reason" for the interim fee system in the Marriage Act was to "prevent a

party from using his or her relative wealth as a litigation tool." (Internal quotation marks omitted.) *Id.* at 420. Further, the court explained:

> "Providing interim attorney fees in Parentage Act and Marriage Act cases well might produce similar public policy benefits that would not have escaped the legislature's attention: avoiding long delays, discouraging the use of superior assets as a litigation tool, encouraging attorneys to undertake parentage actions, and reducing the risk of simply outlasting the disadvantaged party." *Id.* at 420-21.

¶ 43 Similarly, in *Rocca*, this court held that the mother's attorney had a right to seek contribution from the father for attorney fees under the Parentage Act of 1984. Our court stated:

> " 'The fee-shifting provisions of section 508, coupled with the court's ability to award fees directly to the attorney, provide an incentive for attorneys who might otherwise decline to represent spouses with few financial resources of their own. Thus, the attorney's right to proceed against the other spouse for an award of fees is oftentimes essential to a spouse's ability to procure legal representation.' " *Rocca*, 408 Ill. App. 3d at 962 (quoting *Lee v. Lee*, 302 Ill. App. 3d 607, 612-13 (1998)).

¶ 44 Thus, the trial court erroneously determined that, without a written agreement between Carol and Kinnan, section 508(c) of the Marriage Act precluded contribution to attorney fees and costs. Accordingly, the trial court erred by dismissing Carol's motion for attorney fees. The trial court should have held an evidentiary hearing, despite the lack of a written agreement between Kinnan and his client pursuant to section 508(c). The cause is remanded to the trial court for a hearing on Carol's motion seeking contribution to attorney fees and costs pursuant to sections 508(a) and 503(j) of the Marriage Act. See 750 ILCS 5/508(a) (West 2014) ("[C]ontribution to attorney's fees and costs may be awarded from the opposing party in accordance with subsection (j) of Section 503 ***."); 750 ILCS 5/503(j) (West 2014).

¶ 45                                   III. CONCLUSION
¶ 46 For the reasons stated, we reverse the trial court's order and remand for further proceedings.

¶ 47 Reversed and remanded.